Okay, our fourth case of the day is in Appeal No. 23-1534, Parents Protecting Our Children v. Eau Claire Area School District. Mr. Berg, good morning. Good morning, and may it please the Court. When a child expresses a desire to socially transition to a different gender identity, there is a significant decision to be made by some adult about whether that's in the child's best interests. That decision has long-term implications. Many mental health professionals believe that transitioning too early can do significant harm to a child, and that the first step, before making any changes, is a careful professional evaluation. So, Mr. Berg, maybe rather than discussing the merits, it would be helpful, given time constraints, for us to address whether the district court correctly ruled that you, that your client, that the concerns of the members of your organization are not sufficiently ripe yet, focused yet, and such that you can't show standing. Everything is quite speculative. Yes, Your Honor. The district's policy transfers decision-making authority over the decision about whether— Well, but does it? I mean, you know, there are all sorts of merit things about that. You're afraid that it's doing that, but the district's policy, for example, says that parents always have the right to get the school records of their child, and if there is some gender plan, parents have the right to get that. The school also recognizes that names can't be permanently changed on the records until the parents have given their—there are all kinds of things that the parents do, and this is not the only area where parents are not in the direct line. Issues of child abuse, for example, go straight to the state, not to the parents. So it's not unheard of, but I think the district court was concerned that the negative things that your clients are concerned about, which may be very important negative things, are simply a matter of imagination right now, that the record doesn't show that anything has happened and that the chain of maybe this, maybe that, maybe the other thing is just too long. There are three present harms for purposes of standing in this case that we've alleged. The first is the loss of control over this decision. So part of parents' job sometimes is to protect children from themselves. But what decision? What decision? I mean, what evidence is there that any child in the district, but any child of any of your clients' members, has been brought within the scope of this policy? For all we know, they're all children who are comfortable with a conventional heterosexual body and gender identity and everything else. The harm is the loss of control. It's the inability to prevent the child from transitioning in school. Parents can no longer say no because the school will always say yes. So even though nobody has had a problem, no child has been in any way brought within the scope of this policy. The mere possibility—isn't that kind of like lions? Or the Clapper case in particular strikes me as a similar sort of thing where the organization was worried that the government might do something, and if it did something, would interfere with attorney-client relationships and other important interests. But the government hadn't necessarily done anything yet, and the Supreme Court said no standing. Well, we don't know that yet. That's one of the allegations in the complaint. That was the allegation in Clapper as well. Well, one of the allegations in the complaint is that the policy prevents parents from knowing whether the policy has been applied to their child. And why is that different from Clapper? Because this is a loss of decision-making authority. There was no claim like that in Clapper. There was a claim like that in Arizona. But there was a claim of a loss of a very important interest in Clapper. But not this type of claim, not the loss of an exclusive authority, which is the claim of the parents. And that was a similar claim that was made in Arizona State Legislature. Well, the Arizona State Legislature had a very clear situation where it was either going to be the responsibility of the legislature to redistrict, or it was going to be okay for this commission to do the redistricting. So that was a very concrete question. Have you been deprived of your authority to do this thing which the law required to be done? So I think that's way more specific than what you have. Let me put it this way. So if prior consent from a parent is a prerequisite, then parents can prevent the thing from happening simply by doing nothing. But you have no evidence that any of your parents have been involved in this. They don't know precisely because the policy doesn't give them notice or consent. Didn't the 4th Circuit say, why don't you just elect a different school board? I don't understand why this turns into a speculative federal case. Our claim is that parents have a right to prior notice and consent before adults at school treat their child as if they're the opposite sex. Mr. Berg, one of the things that stands out in your complaint is something that's missing. And that is, have you ever given your counsel on the other side or given the school district a call and said, we have some concerns about the policy, the guidance. We'd like to sit down and talk to you about those concerns because we worry about how this guidance might be applied because it really doesn't speak in the full depth that we would prefer as parents, in the event that one of our kids were to encounter one of the issues that would trigger the guidance. Have you ever sat down with them and talked to them or asked to do that? There was a lot that happened that isn't in the complaint before the complaint was filed. I'm asking you right now. Yes. Have you ever written them a letter? Parents raised this issue. It was in the media. Why isn't that in the complaint? Because it's not relevant to standing. It absolutely is relevant. It's absolutely relevant on the imminent or actual injury front of it. Because if not, I don't see how in the world this is any different than Lyons. The present injury is the lack of prior notice. That prevents parents from knowing presently what the policy is. Okay. So what you're saying then is because the policy by its terms prevents this information, that it's facially invalid as a matter of substantive due process. Yes. It is facially invalid because it does not give parents prior notice. It's the most disfavored challenge in law. That's what the U.S. Supreme Court said in Salerno. You cannot identify a more disfavored lawsuit. Given your theory, I'm just going to throw in to complicate life further, that the fundamental source of the substantive due process right on which you're relying is Pierce v. Society of Sisters and Myers v. Nebraska and that line of cases, a line of cases that was expressly repudiated by the Supreme Court in the Dobbs decision as simply being outside the scope of what the federal constitution was designed to address. Your Honor, Dobbs did not eliminate that whole line of cases. It didn't overrule Troxel. It cast some real shadows on the federal constitutional basis for these family rights, individual autonomy kinds of things. That line of cases has not been overruled by the Supreme Court. It didn't overrule Troxel. It didn't overrule Parham. Those cases make very clear that parents have a right to make decisions on behalf of their children. Why don't you just wait until something happens? They can't wait until something happens because they don't receive notice, so they don't actually know whether something is happening. They receive notice about a lot of things. Let me ask you this question. Does the Eau Claire area school district, as many do, have a policy that allows parents to come visit when they wish to? I am not sure. In the wake of a lot of things, most school districts have an open classroom policy. The parent will check in, obviously, for security reasons and can quietly sit in the back of a classroom, observe their child, their parent-teacher meetings. You're assuming a real lack of interaction between the school district and the parents that I'm not sure, in many instances. If it's not in the record, I suppose it's not in the record. But I'd be very surprised if the Eau Claire area school district did not have provisions that allowed parental visits. Let me make a simple comparison that I think might help. Every school district that I'm aware of requires parental consent to give medication at school. Let's say a school district instead said, we're going to make a cabinet available of all over-the-counter medications to students and we'll let them take whatever they want during the school day. It doesn't require parental notice. It doesn't require parental consent. Would a parent have to wait to sue until their child OD'd on Excedrin? Of course not. Because parents have a right to make the decision about what medication their child takes. If you take that example and you translate it legally, which we have to do, we have to conclude that there is no set of circumstances where this guidance could be applied constitutionally. It doesn't exist. We cannot sit here in the courtroom and hypothesize a circumstance where substantive due process rights are respected. That's Salerno. Like it? Like it or dislike it? Our position is that there is no set of circumstances where a school district can secretly begin transitioning a child at school without parental notice. See, the adverbs are the problem. The policy does not have the adverb in it. Yeah, nowhere in the policy does it forbid the parents from being told. Where's the word secret in the guidance? Even where does it say that they won't call up the parents? It says you should first discuss it. Schools personnel should speak with the student first before discussing with the parent. It doesn't say you can't discuss it with the parent. It doesn't say don't discuss it with the parent. I will get to the provisions in the policy, but I first want to say there's no dispute in this case yet about this. The district hasn't disagreed with our characterization of the policy, that it lacks parental notice and consent. The district court didn't agree with that characterization. And even if there is a dispute, this is on a motion to dismiss stage. We haven't even gotten past the motion to dismiss yet. What do you mean there's no dispute? They have a sentence in their bread brief that says, nor has the district intentionally hid information from plaintiff's members. That's important. The guidance does not direct secrecy. Page 25. The guidance does lack parental notice and consent. What do you mean when you say there's no contest? Both parties agree. I just read you a sentence where I think he's going to stand up and say, I disagree. What he's saying in that situation is it doesn't mandate secrecy in the sense that it doesn't force secrecy. What do the parties agree upon? Go back 30 seconds. The parties agree that there is a lack of prior notice and consent under the statute. And that's why they're not going to begin treating children as the opposite. There's no dispute about that. We'll see in a minute. So pointing to the provision of the policy, the form, the gender support plan form at the very top of it says, if parents are not involved in making, in filling out this form, here's what you do. Well, if that form is done, the parent has a right to it under the policy is one of the students school records. That is true, but the form is not a prerequisite before staff may begin treating. What do you do about the, if clause under Salerno? I'm not sure. I understand if parents are not involved. Well, let me give you a hypothetical. They are involved. Uh, the point is the policy itself on its face is facially unconstitutional because it does not give parents prior notice, prior consent before staff will begin treating their child as the opposite. What if the student is 18 or over? Uh, that's a different, that's a different circumstance. That's not an issue. Again, we haven't gotten to that point of the case. This is just a motion to dismiss, but wouldn't that be a different scenario? Yes. I agree. That would be a different potentially legal. I agree. That would be a different scenario. But again, we have not gotten to that point in this, in the case. Okay. Mr. Berg, we've, uh, asked you a lot of questions, maybe giving you a hard time. Um, but let's, uh, hear from Mr. Stadler and then we'll give you some rebuttal time. Thank you. All right. Good morning. May it please the court. My name is Ron Stadler and I represent the defendants in this case. I think when we talk about this case, we have to focus on the principle of standing and not the merits of the issues. But I think that never before in the history of this country and its federal courts has standing been a more important issue. And I raise that and this ties back to one of judge Woods first questions because never before in our history have we seen the political nature of school boards. It doesn't matter if we're talking about to mask or not to mask vaccines, gay pride, transgender issues. It doesn't matter what your school board does because somebody's going to sue them over what they did. And for transgender students, it's a hotbed issue for liberals. It's a hotbed issue for conservatives. And regardless of what your school does on that issue, they're going to get sued. So can I ask you, Mr. Stadler, whether there are any analogies in the law of Wisconsin to other areas where the school has at least the discretion, if it chooses to exercise it that way to take an action vis-a-vis a student without notifying a parent. Sure. And I think you raised the point earlier was child abuse. I mean, they have a mandatory obligation. If a child is suspected of being abused at home, we don't have to go call the parents up and say to them, Hey, we have a concern about your child and you might be abusing them. We go directly to child protective services and make that report. Parents don't have a right to control that. So it's, it's not this all encompassing. So if this, this policy had been written in a slightly different way, just to say our policies to involve the parents whenever possible, only in an extraordinary circumstance where we thought that there was some risk of, of abuse or other danger to the child, would we move ahead without, I mean, in other words, I can imagine a policy like that and I don't see anything in your policy that precludes it from operating that way to judge Scudder's points. But, um, I think when these parents looked at that and saw that there are some circumstances where the child might go to the school and the school wouldn't immediately pick up the phone and call the parents, uh, they became concerned about, uh, what was going on as it were behind their backs. And I agree with that. We, and we, we work with school districts on a daily basis and I can't tell you how many transgender policies that I've developed with school boards. And I've yet to see two that look alike. I mean, everybody does a little bit differently, but one of the things they struggle with is what do we do if parents don't want to be involved? Right. But why this is the problem with this litigation that is very frustrating is to see the parties arguing past each other so much, right? We're not, no, I think you are. And here, here's why. Okay. Because in your brief, okay, you, I think you do a pretty good job of pushing back on the notion that we're going to make a representation right now in our briefing. Okay. And our representation is we intend to include the parents whenever possible absent some extraordinary set of circumstances, including, for example,      and, and, and, and, and, and, and, and, and, and, and that's what I think in part it's frustrating Mr. Berg in the clients. Um, the client that he represents in the members of the organization, you say it doesn't require secrecy, but you don't go one step further than that. But I don't have that judge in the record to make that statement to you. So I can make all kinds of statements to you in a brief, but I got to back it up and I don't have a policy that says that, but is that the school's intent?  You can make a represent. Absolutely not. That's not the school's intent to inform the parents unless there's a dangerous situation. No, it is. I thought there was some language in the policy. Maybe I'm, maybe I made it up that actually does say, you know, the family will be involved. The family is usually involved. It does. And you've got that sentence at the top of the says, if parents are not involved, do you know why that's there? Because some parents choose not to get involved and their kid may come into school and have a gender support plan drafted from them. And the parents know about it and they just don't show up. I think the problem is the policy is not clear that that only applies if the parents don't want to be involved. But here's, here's the bigger problem from a standing perspective and an article three perspective, what Mr. Berg's clients want to do is direct the district's policy. And you hit it right on the head judge Scudder, or maybe it was judge would elect a new school board. That's why there's no standing here. This is a policy decision made by a school board. Not a single one of plaintiffs members can come forward and say, Hey, I have a child who has expressed concerns about their gender or, or, or says, I have a child that I'm worried about. I mean, just I I'm seeing signs that are concerning to me. I think that's what this is. It's devoid of anything to indicate that they have a dog and lions. I mean, to get to the, I mean, we're supposed to apply the law and standing is a big deal. Standing has separation of powers. Concerns that lie behind the doctrine, the what, when should courts decide essentially hypothetical or, or you know, cases that are just too far down the road. You just don't have any of the pieces in place yet. And that's, that's what I think the biggest issue is here. I do think there's, there is also a facial challenge kind of problem since we have been suggesting ways in which even this policy, which might be not artfully drafted, but even this policy could legitimately be applied. And if there are some such situations, then a facial challenge, but that's a merits issue. The question is, do we have, do we have the case joined, you know, and, and what, what your opponents are saying is it is a current problem because there is at least a potential for a parent in their organization to have their decision-making authority over their child taken away from them. And I guess your response is, but who knows that this hasn't happened. And that's why I was asking about the possibility of parents to visit the to make sure that they remain informed about what their child is doing. And if you boil down their argument, it becomes the circular thing where they say, we don't know if we've been injured and therefore we've been injured. How should it impact our analysis that they've alleged more than just that they have a constitutional right to make decisions regarding their children and they want to exercise that they've cited studies in their complaint that show that it's very important from the medical professional side to address these issues with a child before certain steps are taken, that if you wait until certain steps are taken, there might be long-term psychological issues or other issues that, why isn't that sufficient to get to eminence? Because I will tell you, it would be eminent if they could come forward and they said, I have a child who I, even if they said, I suspect I have a child who is going through some gender issues and is going to be subject to this. And I want to address the merits of it and I've got these studies and I've got all this, but they don't, they just say, I'm a member of the school district. I don't like that. You've got this policy. It doesn't apply to a single one of them and it's not going to apply to them. No, they could have come in and they could have provided affidavits. They could have provided something to say, we've got this suspicion about having a child who is transgender and therefore we are going to be affected by this. Don't you think your client could help itself by putting on its website this afternoon, a statement that said, we plan to implement this policy in a way that is inclusive of parents, absent extraordinary circumstances. There is a lot of action that is taking place in Eau Claire in regard to transgender issues, this gender support plan. I, you know, the court's kind of presented. Problem is that it seems like both of you have come into the court and you're asking us to resolve it. Not you. I mean, you're the, you're the defendant. You're the defendant. You're I, I hear you, but it just seems like there, there is room for both sides to come together on some of this. And I, it's just not at all clear from the plaintiff's complaint that there's been any effort to communicate with the district. I don't disagree with that judge. There's nothing in there about it. Or to assure parents that you are going to notify them or have them part of the process, unless there's a very good reason not to. But I think those provisions in the policy though, that you can see where it says if a child tells you they don't want their parents to know this, remind them, this is not a privileged document. It will not be held. That's only if that particular document is completed. Right. But that's what their complaint is. This is over this. It's not as declarative as we're talking about. I understand. And you know, we sent lawyers to redraft this policy. It would probably read different, but it's drafted by educators. Okay. We got your position. Let's Mr. Berger. I think you asked for a couple of minutes. You you're entitled to that. So let's hear what you have to say. You're welcome. Uh, two main points I want to make your honors. Um, so first the, the procedural posture of this case, this was dismissed on a motion to dismiss solely 12 P one solely standard. That's important for two reasons. First, to the extent there are any disputes about the scope of the policy, what it means, what it says that can't be resolved against us at the motion to dismiss stage. No, it's absence though is relevant to the eminence point. And here's what I mean. If my view of this might be totally different, if you had included a paragraph that said, we reached out to the school district and we wanted a meeting on how the policy was going to be implemented because of these reasons, they declined the meeting or they took the meeting, but then told us they have no interest in keeping parents informed of how the Okay. If you had a paragraph in there, don't you see how that would help your eminence argument? I think it's clear enough from the face of the policy. The policy says students have a right to do this without parental involvement, but the policy also does talk. If I was just looking at it, it talks a fair amount about parental involvement and puts in context, you know, that the parents aren't going to be involved. I just underlined it. Students may have these concerns that may include safety concerns, you know, or lack of acceptance. And so students, school personnel should speak with the student first before discussing a student's gender nonconformity or status with the parent or guardian, but that obviously at least once a year or more often as reasonably requested by the student or their parents, guardians. I mean, the parents are in there, maybe not as clearly as they could or should be, but I think to say that this is a black and white situation is overstating it. The policy is if a student does not want the parents to know the school will oblige that they've trained all of their staff. Parents are not entitled to know a gender plan. And then the parents have an absolute right under state law to see that plan. That is not a prerequisite to transitioning a child at school, but let me make the last point that I would like to make. Even if you don't accept our argument that there are present injuries, we have separately alleged a substantial risk and that that is a recognized basis for standing under Clapper. We've alleged in our complaint that this can do long-term damage to children. We've alleged in our complaint that parents have no way to know in advance when or if their children will deal with this. We alleged in our complaint that our plaintiffs don't have any way to know if the policy has been applied to their child precisely because of the lack of notice, those allegations have to be sufficient, at least to make it past the motion to dismiss on a substantial risk theory, which we have brought. And we haven't had a chance to put any evidence in the record to support that. So we should at least have a chance to do that. Before we, before we lose on standing, we haven't had an opportunity to do that. And so you should reverse for that ground at the very least, even if you don't accept our argument that this presently injures parents. Okay. Mr. Berg. Thanks to you, Mr. Stadler. Thanks to you. We'll take the appeal under advisement.